# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### 7:08-CR-126-D
#### 7:10-CV-69-D

|  |  |  |
|---|---|---|
| MUHAMMAD ABDUL RAHMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM and** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This case comes before the court on petitioner Muhammad Abdul Rahman's pro se motion (D.E. 42) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("petition" or "§ 2255 petition").[1]  Respondent filed a motion (D.E. 52)[2, 3] to dismiss the petition.  By order entered 1 August 2013 (D.E. 56), Chief District Judge James C. Dever III allowed the motion to dismiss in part and referred the sole remaining claim, whether trial counsel failed to file an appeal at petitioner's request, to the undersigned for an evidentiary hearing and the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings.  The evidentiary hearing was held before the undersigned on 20 August 2013.  (*See* D.E. 69).  For the following reasons, it will be recommended that respondent's motion to dismiss be granted as to the remaining claim and that this claim be dismissed.

---

[1] Petitioner filed a memorandum (D.E. 42-1) in support of the petition.

[2] Respondent filed a memorandum in support of the motion (D.E. 53) and one exhibit (D.E. 53-1).  Petitioner filed a response in opposition (D.E. 55) and one exhibit (D.E. 55-1).

[3] Although the docket indicates that the motion to dismiss was filed at D.E. 51, respondent inadvertently filed the supporting memorandum at that docket entry.  The motion appears at D.E. 52 and the supporting memorandum was re-filed at D.E. 53.

# BACKGROUND

## I.    Proceedings through Sentencing

On 29 October 2008, petitioner was charged by criminal information (D.E. 4) with one count of conspiring to distribute and to possess with intent to distribute more than 50 grams of cocaine base (*i.e.*, crack) and 500 grams or more of cocaine in violation of 21 U.S.C. § 846 and one count of using and carrying a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c).  Assistant Federal Public Defender Joseph Bart Gilbert entered his appearance as petitioner's counsel (D.E. 3) on 12 September 2008.

At the arraignment and Federal Rule of Criminal Procedure Rule 11 hearing on 17 November 2008 (collectively "arraignment hearing"), petitioner pled guilty to both counts in the information, pursuant to a plea agreement with the government (D.E. 13).  (Arr. Hrg. Tr. (D.E. 35) 25:4-6, 22-24).  Before petitioner entered his plea, the court explained to him, in detail, his various rights, including his right of appeal; the maximum sentence he faced for the charges to which he was pleading guilty; and the court's role as making the final determination on his sentence, regardless of any estimate by his counsel.  (*Id.* 11:10 to 12:5; 17:15 to 18:14; 20:2-19; 21:13 to 22:7; 22:12-23; 23:2-4).    Petitioner repeatedly acknowledged that he understood what the court had explained to him.  (*Id.* 15:9-15; 18:22-24; 20:6-19; 22:6-8; 22:12-23; 23:2-4).  Petitioner also confirmed, when asked by the court, that no one had made any promises to him to induce him to plead guilty.  (*Id.* 22:9-11).  In the plea agreement, petitioner made similar acknowledgements regarding sentencing and his appeal rights.  (Plea Agmt. 1-2 ¶ 2.c.; 5-7 ¶ 3.a., c.).

On 23 April 2009, the court sentenced petitioner to 216 months' imprisonment.  (Sent. Hrg. Tr. (D.E. 34) 26:1-5; J. (D.E. 38) 2).  After imposing the sentence, the court again

explained to petitioner his appeal rights, including the requirement that any notice of appeal be filed within 10 days of the judgment, and specifically informed petitioner that if requested, "the Clerk of Court would prepare and file a notice of appeal on his behalf." (Sent. Hrg. Tr. 27:7 to 28:4).

## II.     Mr. Gilbert's Post-Sentencing Meetings with Petitioner

Immediately after the sentencing hearing, Mr. Gilbert met with petitioner in the courthouse holding cell, as was Mr. Gilbert's usual practice at the time. (Transcript of Hearing (D.E. 70) ("Tr.") 9:20-22; 60:12 to 61:9). Petitioner was upset about the length of the sentence he received and distrustful of Mr. Gilbert because of it. (Tr. 9:9-10; 9:24 to 10:1; 11:12-14; 35:12-23; 64:23-25). Mr. Gilbert discussed with petitioner whether he wanted to appeal and presented him with a one-page form Mr. Gilbert routinely uses in his practice, entitled "Acknowledgement of Appellate Rights and Election Regarding Appeal" ("Appeal Election Form") (D.E. 53-1 at 3), for petitioner to indicate his decision. (Tr. 10:13 to 11:12; 61:10 to 63:4; 79:20 to 80:10). Mr. Gilbert had shown petitioner the form at a prior meeting. (Tr. 80:3-4; *see also* Tr. 33:3-15; 38:12-14; 61:10-20). After a couple of minutes of discussion, Mr. Gilbert said he would meet with petitioner the following day. (Tr. 11:17-19; 62:20-21; 63:2-4). At least one reason for another meeting was the need for privacy from other inmates to be able to discuss petitioner's assistance to the government. (Tr. 10:17-18; 11:4-6; 80:20-21).

The following day, 24 April 2009, Mr. Gilbert met petitioner in a private room at the Franklin County Jail. (Tr. 11:23 to 12:10; 63:12-18). The meeting lasted about an hour to an hour and a half. (Tr. 12:11-12; 82:10-20). During the meeting, Mr. Gilbert and petitioner discussed whether petitioner would appeal and other matters. (Tr. 12:13 to 15:1; 64:1-3;

64:23 to 65:11; 65:17-20; 82:25 to 85:21; 87:9 to 88:19).   Mr. Gilbert again presented

petitioner with the Appeal Election Form and explained it to him.  (Tr. 12:13-16; 35:12; 69:20

to 70:16.  *But cf.* Tr. 35:8-10 (petitioner's denial that Mr. Gilbert went through the form line

by line)).   The form contains a series of eight acknowledgments by the signer regarding the

legal representation he has received and his rights, including his appellate rights.   (Appeal

Election Form).  At the bottom of the form, there appears the following language:

> Knowing and understanding the above, I have decided that I:
>
> ___ DO NOT WISH TO APPEAL      ___ DO WISH TO APPEAL
>
> Date: _____            _____

(*Id.*).[4]  Petitioner placed an "X" on the line for "DO NOT WISH TO APPEAL," signed it, and

dated it "4/24/09."  (Appeal Election Form; Tr. 13:16-17; 14:13-15; 14:25 to 15:1; 36:1; 33:24

to 34:2; 35:22-23).

---

[4] The Appeal Election Form reads in full:

### ACKNOWLEDGEMENT OF APPELLATE RIGHTS AND ELECTION REGARDING APPEAL

I have been represented by the Office of the Federal Public Defender, Eastern District of North Carolina on a criminal matter.

My attorney has explained my rights and decisions during the course of the representation, including the fact that it is my decision whether or not to appeal my judgment.

I understand that Title 18 of the United States Code (18 U.S.C. § 3742) gives a defendant the right to appeal for review of my sentence if it was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or is unreasonable.

I also understand that under the Federal Rules of Appellate Procedure, notice of my appeal must be filed with the United States District Court that imposed my judgment within ten days after entry of the judgment, or it may be dismissed as untimely filed.

My attorney has also explained to me whether or not my attorney believes that any meritorious appellate issue exists in my case, the chances for success, the effect of any guilty plea or waiver of appeal rights contained in a plea agreement, and any possible bad consequences which my attorney believes could result from a ruling against me by the Court of Appeals.

My attorney has answered any and all questions I have about my appeal rights, and I understand those rights.

4

### III. Petitioner's Letter to the Fourth Circuit and First § 2255 Petition

On 2 March 2010, petitioner sent a letter (D.E. 24) to the Court of Appeals for the Fourth Circuit requesting information on the status of a purported appeal by him. Because no appeal by petitioner was pending, the Fourth Circuit construed the letter as a notice of appeal and forwarded it to this court for filing. (*See* 4th Cir. Ltr. (D.E. 24-2)). The petitioner's letter was docketed in this court as a notice of appeal on 9 April 2010. (*See* D.E. 24).

On 16 April 2010, petitioner filed a § 2255 petition ("first petition") asserting a claim of ineffective assistance of counsel on a variety of grounds, including that "trial counsel failed to file a timely notice of appeal, after being instructed to do so." (1st Pet. (D.E. 27) ¶ 12(a)). In the memorandum supporting this petition, petitioner stated: "On April 23, 2009, Petitioner instructed Trial Counsel to file an appeal. However, counsel failed to file a timely written Notice of Appeal and [this is] the subject of one of the claims presented here." (Mem. Supp. 1st Pet. (D.E. 33) 2).

On 10 November 2010, the Fourth Circuit dismissed petitioner's appeal as untimely. (D.E. 37). As indicated below, Judge Dever court subsequently dismissed the first petition as moot.

---

My attorney has asked me to indicate my choice in writing about whether or not I wish to appeal, by marking next to my choice below and by signing this notice. My attorney will sign the form if I refuse to sign the form showing my choice.

Knowing and understanding the above, I have decided that I:

_____ DO NOT WISH TO APPEAL          _____ DO WISH TO APPEAL

Date: _____          _____

(Appeal Election Form).

**IV.     Petitioner's Second § 2255 Petition**

Approximately one year after dismissal of the appeal, on 14 November 2011, petitioner filed a second § 2255 petition ("second petition") (D.E. 42), the one now pending before the court.   In it, petitioner again alleges as one ground for ineffective assistance of counsel that his trial attorney failed to file a notice of appeal at his request.   (2d Pet. 4 ¶ 12; 9 ¶ 14).   The supporting memorandum states, "Immediately upon receiving his sentence, [petitioner] unequivocally requested his counsel file an appeal."   (Mem. Supp. 2d Pet. (D.E. 42-1) 4).

On 27 February 2011, respondent filed its motion (D.E. 52) to dismiss the petition. Included with the supporting memorandum is an affidavit (D.E. 53-1) of Mr. Gilbert responding to petitioner's claims of ineffective assistance of counsel.   With respect to petitioner's allegation that he failed to follow petitioner's instructions to file a notice of appeal, Mr. Gilbert identified and attached a copy of the Appeal Election Form, stating:

> I have attached a copy of the writing [petitioner] signed on April 24, 2009, in which he acknowledged our discussions about his appellate rights, and informed me that he did not wish to appeal.

(Gilbert Aff. 1).

Petitioner filed his response (D.E. 55) to the motion to dismiss on 20 March 2012.   He submitted with it his own statement (D.E. 55-1), neither sworn nor made under penalty of perjury pursuant to 28 U.S.C. § 1746(2) yet entitled an affidavit, disputing Mr. Gilbert's representations regarding his decision on an appeal.   Specifically, petitioner states:

> Less than three days prior to[5] the sentencing hearing, attorney Gilbert met
> with the affiant at the jail for a second time.   During this meeting, the sentence
> that far exceeded the 10 years promised by his attorney, the affiant
> immediately and unequivocally asked his attorney to appeal.   In response,
> attorney Gilbert slid [an Appeal Election Form] in front of the affiant telling

---

[5] The context and other evidence of record suggests that "prior to" was intended to signify "after."

him to sign it that he did not want to appeal. The affiant refused to sign the [Appeal Election Form] and reitterated [sic] his request that attorney Gilbert pursue his appeal. The very next day attorney Gilbert showed up at the jail with the same [Appeal Election Form] and made false statements and false assurances to the affiant in order to gain his signature purporting to reverse the clear request made in court the day before. At no time did Gilbert give the affiant the proper legal advice required by the relevant standard of care regarding his right to appeal. Gilbert instead lied to the affiant and told him that the affiant "had to sign the paper to get his Rule 35 motion." Nevertheless, and despite his signing the [Appeal Election Form] in reponse [sic] to attorney Gilbert's demands, the affiant continued to maintain his desire to his attorney that he appeal his case.

(Pet. Stmt. ¶ 11).

On 1 August 2013, Chief Judge Dever granted respondent's motion to dismiss in part and dismissed all of the claims raised in petitioner's second petition except for the one referred to, and now pending before, the undersigned. (1 Aug. 2013 Order 10). The court also denied the first § 2255 petition as moot. (*Id*.).

## APPLICABLE LEGAL STANDARDS

### I.    28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The burden is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g., Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); *Toribio-Ascencio v. United States*, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 WL 4484447, at *1

(E.D.N.C. 25 Oct. 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

## II.     Ineffective Assistance of Counsel

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id*. at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Id*

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. The Court further emphasized that it "employ[ed] the term 'consult' to convey a specific meaning–advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). "[A] defendant who instructs counsel to initiate an

appeal reasonably relies upon counsel to file the necessary notice." *Id*. "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000).

## III. Legal Standards for Determining Credibility

In assessing the credibility of witnesses, trial courts consider "variations in demeanor and tone of voice." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). In addition, "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Id.*; *see also United States v. Marcavage*, 609 F.3d 264, 281 (3rd Cir. 2010) (applying factors in *Anderson* in holding that trial court's crediting of the government's evidence was error on the grounds that "[t]here are simply too many inconsistencies and gaps in the testimony of the government's witnesses, not to mention substantial contradictions between that testimony and other evidence in the record"). Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements. *See, e.g.*, *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010).

## DISCUSSION

The court finds that petitioner has failed to show by a preponderance of the evidence that he instructed Mr. Gilbert to file an appeal. Instead, the credible evidence establishes that petitioner expressly communicated to Mr. Gilbert that he did not want to appeal. Petitioner's claim accordingly fails.

The Appeal Election Form alone is arguably dispositive of petitioner's claim. It unequivocally shows that petitioner did not direct his counsel to file an appeal. Petitioner admitted at the hearing that he signed the form indicating that he did not wish to appeal. (Tr.

13:16-17; 14:13-15; 14:25 to 15:1; 36:1; 33:24 to 34:2; 35:22-23). Petitioner also admitted at the hearing that Mr. Gilbert had told him he could appeal, that he understood the form was a "waiver" of his right to appeal, and that he could have put an "X" next to the statement "DO WISH TO APPEAL." (Tr. 34:3-6; 35:8-9, 12, 24-25; 36:2-5). As petitioner clearly understood, his execution of the Appeal Election Form manifestly mooted any prior oral requests he made to Mr. Gilbert to file an appeal, whether at the courthouse holding cell after sentencing or during his discussion with Mr. Gilbert in the Franklin County Jail. (Tr., *e.g.*, 35:8-9, 24-25).

Petitioner contends that Mr. Gilbert pressured him into indicating in the form that he did not wish to appeal. He testified, for example:

> I mean, I felt real pressed at the end of it [*i.e.*, the 24 April 2009 meeting]. I felt like he pressed me like I didn't have no other choice but to go this route and sign this paper at the end of the day. But for at least an hour he set there back and forth, back and forth. I didn't want to sign it. I wanted to appeal.
> At the end of the day, you know, I finally broke and I guess I signed the paper.
> . . . .
> I just felt – I felt like, you know, with him as my attorney, once I asked for appeal, he should have just filed the appeal. I feel like I was really pressured into signing that paper.
> . . . .
> On that day, his whole mission was to get me to sign the waiver. That was the mission for that day.
> . . . .
> So when he asked me to sign it, that was why it was no, no, no, I don't want to sign. I don't want to sign. I don't want to sign. He finally wore me down after an hour and I signed it.
> . . . .
> . . . I am saying he wore me down and I finally signed it.
> . . . .
> . . . The only thing – the only thing I am saying is I felt pressure in the signing that paper. I asked him more than ten times to file an appeal for me. That is the only thing I am here to say.

(Tr. 13:8-13; 14:21-24; 35:3-4; 35:20 to 23; 35:25 to 36:1; 38:14-17).

Petitioner has cited no authority holding that any such pressure would negate the unequivocal communication to Mr. Gilbert in the form that he did not wish to appeal. In any event, the court does not find petitioner's contention of undue pressure by Mr. Gilbert credible.

Among other reasons, petitioner did not make this allegation until very recently. In each of his § 2255 petitions and the memoranda supporting them, petitioner asserted only that counsel failed to file a notice of appeal after petitioner expressly requested him to do so. Nowhere in these filings does he mention the Appeal Election Form or Mr. Gilbert's alleged pressuring of him to complete it as he did. Rather, it was not until March 2012—nearly two years after filing his first § 2255 petition in April 2010, when responding to respondent's motion and Mr. Gilbert's affidavit—that petitioner first mentions the Appeal Election Form and Mr. Gilbert's alleged pressuring of him with respect to it. (Pet. Stmt. ¶ 11). Petitioner presented no evidence or argument explaining why, if Mr. Gilbert had pressured him as he now alleges, he delayed so long in making the allegation.[6] Loss of memory of the 24 April 2012 meeting is certainly not a reason since he testified in detail about it at the hearing.

Moreover, the Appeal Election Form itself makes clear that the choice about appealing was petitioner's. By marking the "X" as he did, petitioner was indicating, that "*I have decided that I . . . DO NOT WISH TO APPEAL.*" (Appeal Election Form) (emphasis added). Elsewhere, the form states, "My attorney has explained . . . the fact that it is *my* decision whether or not to appeal my judgment. . . . [and] has asked me to indicate *my* choice in writing about whether or not *I* wish to appeal." *Id.* (emphasis added). In addition, Mr. Gilbert had advised petitioner at the outset of his representation of petitioner, in accordance with his

---

[6] Petitioner's failure to assert his contention of undue pressure by Mr. Gilbert in either of his petitions could arguably be an independent basis for dismissal of his claim. *See, e.g., Albarran-Torres v. United States*, Nos. 7:10-CR-153-D, 7:12-CV-32-D, 2013 WL 2456554, at *3 (E.D.N.C. 6 Jun. 2013).

routine practice, that the decision whether to appeal was one of four decisions that a defendant himself must make. (Tr. 43:1-16; 45:4-11).

Further, Mr. Gilbert's testimony, which the court finds credible, shows that he did not pressure petitioner into indicating on the Appeal Election Form that he did not want to appeal. Instead, Mr. Gilbert's testimony shows a conscientious and entirely proper effort on his part to make sure that petitioner understood the advantages and disadvantages of appealing and not appealing.

Specifically, Mr. Gilbert told petitioner that, in his judgment, he had no meritorious ground for an appeal. (Tr. 14:2-8; 64:25 to 65:3; 84:24 to 85:2; *see also* Tr. 10:18-21; 11:7-10). He also explained to petitioner that filing an appeal would virtually eliminate any chance he might have for a future reduction of his sentence pursuant to Federal Rule of Criminal Procedure 35[7] based on his cooperation with the government and law enforcement because, in Mr. Gilbert's experience, the government followed a policy of not filing a Rule 35 motion when a defendant appeals his sentence. (Tr. 12:21-25; 65:4-18; 85:3-17). Conversely, he told

---

[7] Rule 35 provides, in relevant part, as follows:

**(b) Reducing a Sentence for Substantial Assistance.**

**(1) In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

**(2) Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

(A) information not known to the defendant until one year or more after sentencing;

(B) information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

(C) information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

Fed. R. Crim. P. 35(b).

petitioner, if he did not appeal, the government might still file a Rule 35 motion, although it was not required to do so. (Tr. 65:18-20; 85:10-13). Mr. Gilbert believed petitioner had clearly provided the government with substantial assistance and that petitioner "deserved" a Rule 35 motion. (Tr. 76:7-23). Mr. Gilbert understood that petitioner was very upset about the length of his sentence, but his goal during the meeting was to make sure, as long as it took, that petitioner understood the consequences of both appealing and not appealing. (Tr. 63:22-23; 64:23-25; 83:17 to 84:1; 84:9-16). Despite his opinion that an appeal would have negative consequences for petitioner, he would have filed an appeal if, at the end of the meeting, petitioner had requested that he do so. (Tr. 84:2-5). At the hearing, Mr. Gilbert expressly denied browbeating petitioner into not appealing or arguing with him about it. (Tr. 63:10-11; 84:6-8; 87:13 to 88:19).

The court finds Mr. Gilbert's testimony credible, in part, because of his experience as a criminal defense attorney. He has been representing defendants in federal criminal cases for 20 years, including 9 years on the Criminal Justice Act panel and 11 years serving in the Office of the Federal Public Defender. (Tr. 40:7-15). His conduct, as described in his testimony, is consistent with that of an experienced criminal defense lawyer.

Moreover, as Mr. Gilbert himself emphasized at the hearing, he had no motive to force petitioner not to appeal against petitioner's will.[8] (Tr. 64:4-22). In addition, Mr. Gilbert's testimony was matter-of-fact, not adversarial, in tone. He evinced no hostility, but rather sympathy, toward petitioner.

---

[8] For example, an appeal would not have entailed any additional work for Mr. Gilbert. As he explained at the hearing, when a defendant requests an appeal, he simply directs his assistant to file the notice of appeal and appellate lawyers in the Office of the Federal Public Defender take over the case. (Tr. 64:4-16; *see also* Tr. 92:4-16).

Notwithstanding petitioner's contention that Mr. Gilbert pressured him not to appeal, petitioner's own testimony about the substance of the 24 April 2012 meeting is largely consistent with Mr. Gilbert's. The gravamen of petitioner's testimony is that there was an extended discussion between him and Mr. Gilbert about the pros and cons of appealing, culminating in petitioner's decision not to appeal. Petitioner testified, for example, as follows:

> Well, he was back at me with the same sheet of paper and asking me to sign the paper. And I told him I didn't want to sign it.
> So I told him I wanted to appeal. And you know, we just went back and forth, back and forth. He kept giving me reasons why I shouldn't appeal. I kept telling him that I wanted to appeal it, and him telling me if I was going to plan to assist the government, that they wouldn't like it if I appealed it and they wouldn't let me assist them. I couldn't help myself if I appealed this.
> My thing was, the whole time, you saying – you are saying this, but you let him give me all this time that I shouldn't have got. Certain arguments I asked you to argue, you wouldn't argue.
> So even by me assisting the government, I am working off time I should have never got, you know. So it was just the same thing back and forth for an hour.
> I mean, I felt real pressed at the end of it. I felt like he pressed me like I didn't have no other choice but to go this route and sign this paper at the end of the day. But for at least an hour he set there back and forth, back and forth. I didn't want to sign it. I wanted to appeal.
> At the end of the day, you know, I finally broke and I guess I signed the paper.

(Tr. 12:15 to 13:15).

It is not surprising that a discussion between petitioner and Mr. Gilbert about appealing would involve a lengthy series of exchanges between them given petitioner's strong feelings about the sentence he received, his resulting distrust of Mr. Gilbert, the issues at stake for petitioner, and Mr. Gilbert's determination to make sure petitioner understood the consequences of petitioner's decision regarding an appeal, however long it took. Such an

exchange, particularly where petitioner admits it was a two-way process, does not demonstrate undue pressure by Mr. Gilbert.

If petitioner had, in fact, wanted to appeal, it is reasonable to expect that he would have contacted Mr. Gilbert again about filing a notice of appeal or would have asked the Clerk to file a notice of appeal for him, as the court advised him he could do at the sentencing hearing. There is no evidence he did either. Indeed, both petitioner and Mr. Gilbert testified that petitioner had no further communications with Mr. Gilbert regarding an appeal[9] after petitioner signed the Appeal Election Form. (Tr. 15:2-25; 67:8-12).

Other aspects of petitioner's testimony undermine his credibility more generally and thereby the credibility of his contention that Mr. Gilbert pressured him not to appeal.[10] For example, petitioner acknowledged at the hearing that he did not file an appeal right after he was sentenced. (Tr. 6:16-18). He had no reason to believe an appeal had been filed on his behalf thereafter. Thus, when petitioner sent his letter to the Fourth Circuit inquiring about the status of his purported appeal, which he admitted doing at the hearing (Tr. 6:19-22), he was implicitly misrepresenting to that court that such an appeal existed.

Further, petitioner testified that "I thought I was going to get ten years. I ended up getting 18 years." (Tr. 10:8-10; *see also* 2d Pet. 4 ¶ 12(a) (alleging that counsel told him "he was 'getting him' only 10 years")). But petitioner admitted during cross-examination that he had been informed by the court during his arraignment hearing of the maximum penalty he could receive, that any sentence calculated by counsel was only an estimate, and that

---

[9] Both petitioner and Mr. Gilbert did testify that they had one telephone conversation after the Appeal Election Form was signed, in which Mr. Gilbert advised petitioner that filing a § 2255 petition would eliminate any chance the government would file a Rule 35 motion, as with the filing of an appeal. (Tr. 15:23 to 16:14; 68:14-23).

[10] Petitioner's demeanor did not provide meaningful insight into his credibility. While he appeared nervous when testifying, he also appeared nervous when not testifying. His demeanor did not vary materially with the questions posed to him.

notwithstanding any estimate, it was up to the court to determine his actual sentence. (Tr. 21:11-19; *see also* Arr. Hrg. Tr. 20:2-19; Plea Agmt. 7 ¶ 3.c. ("The Defendant understands . . . [that] any estimate of the sentence received from any source is a prediction, not a promise, and that even if a sentence up to the statutory maximum is imposed, the Defendant may not withdraw the plea of guilty.")). In fact, petitioner both was advised by the court at the arraignment hearing and acknowledged in the plea agreement that the *minimum* sentence for one of the charges was 10 years. (Arr. Hrg. Tr. 17:15-18; Plea Agmt. 6 ¶ 3.a. Ct. One (1) (second)). In addition, the court credits Mr. Gilbert's testimony that he would never promise a client, including petitioner, that any particular sentence would be imposed by the court and that to do so, in his opinion, would be clear malpractice. (Tr. 51:2-6).

Petitioner testified that one of the reasons he believed he was sentenced incorrectly was that the amount of drugs used to support his drug conviction was incorrect. (Tr. 24:24 to 25:11). Yet he also conceded that he made no objection during the arraignment hearing when the government made its proffer of evidence in the case, which included the amount of drugs involved in the charged offenses. (Tr. 22:12 to 24:23; *see also* Arr. Hrg. Tr. 26:12 to 27:8).

The court concludes that petitioner knowingly and voluntarily signed the Appeal Election Form and that Mr. Gilbert reasonably relied on it in not filing an appeal on petitioner's behalf. Petitioner has therefore failed to show that in not filing an appeal Mr. Gilbert contravened any instructions the petitioner had given him. Petitioner's claim of ineffective assistance of counsel based on the alleged failure to file an appeal as instructed should therefore be dismissed.

**CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that respondent's motion (D.E. 52) to dismiss petitioner's claim of ineffective assistance of counsel for failure to file an appeal be GRANTED and that this claim be DISMISSED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 6 September 2013 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within seven calendar days after service of the objections on the responding party, but in no event later than 13 September 2013.

SO ORDERED, this the 27th day of August 2013.

James E. Gates
United States Magistrate Judge